**SIGNED THIS: July 21, 2008**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| MICHAEL RICHARD IVERSON and ) | No. 05-80982 |
| SUSAN MARIE IVERSON, ) | |
| ) | |
| Debtors. ) | |
| ) | |
| ) | |
| RICHARD E. BARBER, Chapter 7 Trustee ) | |
| of Michael Richard Iverson and Susan Marie ) | |
| Iverson, and not Individually, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adv. No. 06-8169 |
| ) | |
| RICHARD IVERSON, NELLIE IVERSON ) | |
| and IH MISSISSIPPI VALLEY CREDIT ) | |
| UNION, ) | |
| Defendants. ) | |

**O P I N I O N**

This matter is before the Court on the Motion for Summary Judgment filed by

Richard E. Barber, the Chapter 7 Trustee (TRUSTEE), and the Defendants' Joint Motion for

Summary Judgment filed by Richard Iverson, Nellie Iverson (collectively, the IVERSONS) and IH Mississippi Valley Credit Union (IHMVCU). The motions seek summary judgment on the Complaint filed by the TRUSTEE to avoid and recover a series of transfers made by the Debtors, Michael Richard Iverson and Susan Marie Iverson (DEBTORS) as either preferential or fraudulent transfers under Sections 544, 547 and 548 of the Bankruptcy Code.

**FACTUAL AND PROCEDURAL BACKGROUND**

The basic facts are not in dispute. On May 28, 1998, the IVERSONS applied for a $46,000 home equity line of credit loan from IHMVCU. The Home Equity Line of Credit/Credit Committee Summary and an Application Summary for the loan contain notations indicating that the money was borrowed to purchase a motor home or a vacation home. The loan repayment terms provided for an interest rate of 8.5%, to be repaid in 180 monthly payments of $460 each.

On June 2, 1998, the IVERSONS transferred the $46,000 to the DEBTORS, who were not yet married, and the DEBTORS in turn purchased their home with these funds. The parties memorialized the transaction in a note and an unrecorded mortgage dated June 2, 1998. The note provides for the DEBTORS to make payments of $450 per month on the loan of $46,000 from the IVERSONS at 0% until the obligation is paid in full.[1] Subsequently, the DEBTORS were married on September 5, 1998. The DEBTORS made payments in the amount of $460 per month on the loan from 1998 forward and did not miss

---

[1] Although the promissory note states that the payments are to be $450 per month, the DEBTORS testified during their depositions that they were making payments of $460 per month to IHMVCU. Furthermore, although the note states that the interest rate is 0%, it requires the DEBTORS to make payments in almost the same amount required by the loan documents between the IVERSONS and IHMVCU, which provided for the loan to be paid over 15 years at an annual interest rate of 8.5%.

2

any payments, although some of the payments may have been made a day or two late at times. In repaying the loan, the DEBTORS made the monthly payments directly to IHMVCU rather than to the IVERSONS and, in exchange, received an equivalent dollar-for-dollar reduction of the amount of their indebtedness to the IVERSONS. In 2002, the DEBTORS took out a $100,000 loan from HSBC Mortgage to pay for an addition to their home and to consolidate debt. The DEBTORS struggled financially during the period from 2000 through 2005, and approximately two years before they filed their petition, they sought help from CMI, a debt counseling agency, to pay down their debt. The DEBTORS paid CMI $1,622 per month in an attempt to get their debt under control.

On March 7, 2005, the DEBTORS filed their Chapter 7 petition. In their Statement of Financial Affairs, under question number 3(b), which inquires about payments to or for the benefit of insiders made within one year immediately preceding the bankruptcy filing, the DEBTORS disclosed making payments totaling $5,520 (12 x $460) with the notation, "payments on loan for mom $460 per month to I.H. Mississippi Valley C.U. that was for a loan made by the credit union under the mother's name, for the Debtors. Ordinary Course of Business." The Statement of Financial Affairs shows that $26,000 was still owing on the loan at the time the petition was filed. The DEBTORS listed the debt to the IVERSONS on Schedule F as a "misc loan" with the amount unknown and further state "this is the loan from I.H. Mississippi Valley C.U. that was listed on the Statement of Financial Affairs."[2] On Schedule J, the DEBTORS showed rent or mortgage payments of

---

[2] On Schedule D, the DEBTORS list HSBC Mortgage as holding the first mortgage on their home in the amount of $98,868.

3

$786 per month but do not show the $460 per month payment to the IVERSONS.[3] The DEBTORS were issued a discharge on June 17, 2005.

The TRUSTEE timely filed a four-count complaint against the IVERSONS and IHMVCU, alleging that the DEBTORS made payments to IHMVCU on a debt for which they were not obligated and that such payments constituted avoidable preferences or fraudulent transfers under the Bankruptcy Code and the Illinois Uniform Fraudulent Transfer Act (UFTA).  In Count I, the TRUSTEE seeks to avoid payments transferred to or on behalf of the IVERSONS within one year of the date of the DEBTORS' bankruptcy petition, alleging such payments were either a preference under Section 547 or a fraudulent conveyance under Section 548.  In Count II, the TRUSTEE seeks to avoid the payments made by the DEBTORS to IHMVCU within one year of the DEBTORS' bankruptcy petition as fraudulent transfers under Section 548.  In Count III, the TRUSTEE seeks to avoid two years of payments to IHMVCU under Section 548.[4]  In Count IV, the TRUSTEE seeks to avoid five years of payments to IHMVCU under Section 544.[5]

The IVERSONS and IHMVCU filed separate but essentially identical answers to the TRUSTEE'S Complaint, admitting that payments of an undetermined amount were made by the DEBTORS but denying the avoidability of the transfers.  Both Defendants contend that any such payments were for the direct financial benefit of the DEBTORS and raise the

---

[3] During her deposition, Susan stated that the $786 rent or home mortgage payment shown on Schedule J was the payment to HSBC.

[4] Section 548 was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to extend the reach-back period to two years for all cases filed on or after April 21, 2006. However, the DEBTORS filed their bankruptcy petition on March 7, 2005 and under the pre-BAPCPA version of Section of 548 in effect at that time, the applicable reach-back period is only one year.

[5] In his Motion for Summary Judgment and Memorandum of Law, the TRUSTEE clarifies his position, breaking down the claims as follows: (1) for one year for the insider preference payments, (2) for one year for the fraudulent conveyances under Section 548, and (3) for four years under Section 544 and the Illinois Uniform Fraudulent Transfer Act.

4

ordinary course affirmative defense under Section 547(c)(2) in response to the TRUSTEE'S Section 547 preference claim.[6] IHMVCU asserts a cross-claim for indemnity against the IVERSONS to the extent of any recovery by the TRUSTEE.

The TRUSTEE filed a Motion for Summary Judgment alleging he is entitled to summary judgment on his fraudulent conveyance claims because the undisputed summary judgment evidence shows that the DEBTORS made payments to IHMVCU on behalf of the IVERSONS at a time when the obligation to IHMVCU was owed by the IVERSONS, not the DEBTORS.[7] The IVERSONS and IHMVCU filed a joint cross-motion for summary judgment, asserting they are entitled to judgment as a matter of law because the undisputed evidence shows that each of the DEBTORS' payments to IHMVCU reduced their documented indebtedness to the IVERSONS in an equal, dollar-for-dollar amount, and therefore the DEBTORS received reasonably equivalent value and the payments to IHMVCU did not reduce or diminish the bankruptcy estate. Alternatively, the IVERSONS and IHMVCU assert that the TRUSTEE is not entitled to summary judgment on his fraudulent conveyance claims because there remain issues of material fact regarding whether the DEBTORS were insolvent during the relevant time period. The IVERSONS and IHMVCU also move for summary judgment on the TRUSTEE'S Section 547 preference claim based on their affirmative defense that all of the transfers were made within the ordinary course of business between the parties.

---

[6] The Defendants allege that:

> Any payments received by IHMVCU were in payment of a debt incurred by the Debtors in the ordinary course of business or financial affairs of the Debtors, Richard and Nellie Iverson and/or IHMVCU and such transfers were made in the ordinary course of business or financial affairs of the parties and were made according to ordinary business terms.

[7] Although the TRUSTEE'S motion makes reference to his Section 547 claim, no arguments are made in his brief in support of his preference claim.

**ANALYSIS**

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The primary purpose of summary judgment is to isolate and dispose of factually unsupported claims. *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001).

To prevail on a motion for summary judgment, the moving party must establish there is no genuine issue of material fact as to any essential element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When a moving party has met its initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-movant to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial. Inferences to be drawn from underlying facts must be viewed in the light most favorable to parties opposing the motion. *In re Chambers*, 348 F.3d 650 (7th Cir. 2003). A material factual dispute is sufficient to prevent summary judgment only when the disputed fact is determinative of the outcome under applicable law. It is not the role of the trial court to weigh the evidence or to determine credibility, and the moving party cannot prevail if any essential element of its claim for relief requires trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. The nonmoving party may not rest upon mere denials or allegations in the pleadings but must set forth

6

specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324. However, if evidence opposing a motion for summary judgment is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. On cross-motions for summary judgment, the court must rule separately on each motion and each party bears the burden of demonstrating that judgment should be entered in their favor. *In re Chambers*, 283 B.R. 913 (Bankr.N.D.Ill. 2002).

**Fraudulent Transfer Claims**

Upon the filing of a Chapter 7 bankruptcy petition, the trustee has the exclusive right to bring an action to recover property fraudulently transferred by the Debtor. *In re Clark*, 374 B.R. 874, 876 (Bankr.M.D.Ala. 2007). Section 548(a) of the Bankruptcy Code permits a trustee to "avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor" involving actual or constructive fraud. The object of Section 548 is to prevent the debtor from depleting the resources available to creditors through gratuitous transfers of the debtor's property. *Matter of Treadwell*, 699 F.2d 1050, 1051 (11th Cir. 1983). Section 548(a)(1)(B), as applicable here, provides:

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
> * * *
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any

7

>>property remaining with the debtor was an unreasonably small capital; or
>
>>(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

To avoid a transfer under this provision as constructively fraudulent, a trustee has the burden of proof to establish each of the following elements: (1) that an interest of the debtor in property was transferred; (2) that the transfer of that interest occurred within one year before the date of the filing of the bankruptcy petition; (3) that the debtor received less than "reasonably equivalent value" in exchange for the transfer at issue; and (4) that the debtor was insolvent on the date of the transfer or became insolvent because of the transfer. *In re Dunbar*, 313 B.R. 430, 434 (Bankr.C.D.Ill. 2004) (citing *In re GWI PCS 1 Inc.*, 230 F.3d 788 (5th Cir. 2000), *cert. denied*, 533 U.S. 964, 121 S.Ct. 2623, 150 L.Ed.2d 776 (2001)).[8]

The TRUSTEE also seeks to avoid the transfers under Section 544(b)(1), which provides that a trustee may avoid transactions that can by avoided by an unsecured creditor under state law. 11 U.S.C. § 544(b)(1); *In re Image Worldwide, Ltd.*, 139 F.3d 574, 576-77 (7th Cir. 1998). The state law applicable in this instance is the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 *et seq.* (the "UFTA"). The provisions of the UFTA are analogous to Sections 548(a)(1) and (2) and, like Section 548, provide for avoidance if a transfer was actually fraudulent or constructively fraudulent. *See* 740 ILCS 160/5(a).

Section 5(a) of the UFTA provides:

>(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the

---

[8]The TRUSTEE does not allege that the transfers were actually fraudulent under Section 548(a)(1)(A).

8

> transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>>
>> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> (A) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>>
>>> (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILCS160/5(a).

While Section 548(a), as applicable here, limits the trustee to avoidance of transfers made within one year before the bankruptcy filing, the UFTA provides for avoidance of transfers within four years after the transfer was made. 740 ILCS 160/10(a). The Illinois courts have not yet elaborated on what constitutes "reasonably equivalent value" for purposes of Section 160/5(a). One Illinois court has stated that there is no reasonably equivalent value when there is no or inadequate consideration. *Regan v. Ivanelli*, 246 Ill.App.3d 798, 617 N.E.2d 808, 814 (Ill.App. 2 Dist. 1993). However, because the provisions of the UFTA parallel Section 548 of the Bankruptcy Code, courts can look to the interpretation of "reasonably equivalent value" under Section 548. *In re Spatz*, 222 B.R. 157, 164 (N.D.Ill. 1998); *see also Image Worldwide*, 139 F.3d at 577 (because the Illinois UFTA is a uniform act which derived the phrase "reasonably equivalent value" from Section 548, the court may look to cases under Section 548 and other cases interpreting other states' versions of the UFTA for assistance).

For the TRUSTEE to prevail on his Motion for Summary Judgment on his fraudulent conveyance claims, the Court must find that the undisputed evidence establishes that (1) an interest of the DEBTORS was transferred, (2) within one year under Section 548 or four years under Section 544 and the Illinois UFTA, (3) that the DEBTORS received less than reasonably equivalent value in exchange for the transfer, and (4) that the DEBTORS were insolvent on the date of the transfer or became insolvent because of the transfer. For the IVERSONS and IHMVCU to prevail against the TRUSTEE on their Motion for Summary Judgment, they must submit affirmative evidence that negates an essential element of the TRUSTEE'S claim against them or demonstrate that the TRUSTEE'S evidence is insufficient to establish an essential element of the TRUSTEE'S claim against them.[9]

The primary issue is whether the DEBTORS received "reasonably equivalent value" for their payments to IHMVCU on behalf of the IVERSONS. The first step in the determination of reasonably equivalent value under Section 548(a)(1)(B) is whether the DEBTOR received value in exchange for the transfer. *Anand v. National Republic Bank of Chicago*, 239 B.R. 511, 516-17 (N.D.Ill. 1999). "Value is defined to mean "property, or satisfaction or securing of a present or antecedent debt of the debtor . . . . " 11 U.S.C. § 548 (d)(2)(A). Value has been defined as that which provides an economic benefit, either direct or indirect, to the DEBTOR. *In re Wilkinson*, 319 B.R. 134, 138 (Bankr.E.D.Ky 2004), *aff'd* 196 Fed.Appx. 337, 2006 WL 2380887 (6th Cir. 2006); *In re Empire Interiors, Inc.*, 248 B.R. 305, 308 (Bankr.N.D.Ohio 2000). The rationale for the economic benefit requirement is to protect

---

[9]The TRUSTEE'S claims are asserted against both Defendants in the selfsame fashion. Moreover, the TRUSTEE fails to distinguish between avoidance of the transfers under Sections 547, 548 and 544 and recovery of the transfers under Section 550, although these concepts are separate and independent under the Bankruptcy Code. Given the result reached by the Court, the TRUSTEE'S conflation of avoidance and recovery need not be set straight.

a debtor's unsecured creditors by preserving the value of the debtor's estate. *Empire Interiors*, 248 B.R. at 308.

The second step measures the value of what the debtor received against the value of what was transferred. *Matter of Vitreous Steel Products Co.*, 911 F.2d 1223, 1234-35 (7th Cir. 1990). Equivalent value must be measured as of the time of the transfer. *McCook Metals, L.L.C.*, 319 B.R. 570, 589 (Bankr.N.D.Ill. 2005). Reasonable equivalence is a question of fact that depends on the particular circumstances surrounding the transaction in question. *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir. 1997). There is no fixed mathematical formula for determining whether reasonably equivalent value has been received. *Id.*

While courts have recognized that a debtor's payment of third-party debts usually carries no direct economic benefit for the debtor, courts have been willing to consider indirect benefits received by a debtor if those benefits are fairly concrete. *Image Worldwide*, 139 F.3d at 578. A dollar-for-dollar reduction of a debtor's debt as a result of payment to a third party constitutes reasonably equivalent value. *See In re Wilkinson*, 196 Fed.Appx. 337, 342, 2006 WL 2380887 (6th Cir. 2006).

The undisputed summary judgment evidence shows that in 1998, the IVERSONS took out a home equity line of credit loan in the amount of $46,000 and in turn transferred the proceeds to the DEBTORS to enable them to purchase a home, in exchange for a promissory note in the same amount and a mortgage securing the note. As a convenience, the parties agreed that the DEBTORS would make payments directly to IHMVCU. Both DEBTORS testified during their depositions that for each payment they made to IHMVCU, they received an equivalent dollar-for-dollar reduction of their debt to the IVERSONS.

11

The TRUSTEE does not dispute any of the above facts or attack the validity or enforceability of the note and mortgage. Instead, the TRUSTEE urges the Court to "look beyond the dollar-for-dollar defense" asserted by the IVERSONS and IHMVCU because the reduction in the DEBTORS' debt load was reduction in debt owed to the DEBTORS' immediate family members. Focusing on the insider status of the IVERSONS, he asserts that when an allegedly fraudulent transfer involves an immediate family member as a preferred creditor, the burden shifts to the defendant to show the DEBTOR received reasonably equivalent value for the transfer. The TRUSTEE asserts that the IVERSONS and IHMVCU must show that the debt would be enforced and payment would be extracted to carry their burden on this point. According to the TRUSTEE, the IVERSONS and IHMVCU have "done nothing to meet their burden of proving that the IVERSONS would have enforced payment of this debt." Because the IVERSONS and IHMVCU have not established that the IVERSONS would enforce the terms of the note and mortgage, the TRUSTEE characterizes the transfer of the $46,000 to the DEBTORS from the IVERSONS as a "gift" rather than a "loan."

In support of this argument, the TRUSTEE cites *Falcon v. Thomas,* 258 Ill. App.3d 900, 910, 629 N.E.2d 789, 796 (Ill.App. 4 Dist. 1994). In *Falcon*, a judgment creditor sought to set aside a transfer of real estate from the debtor to his four sons as a fraudulent conveyance under Section 6(a) of the UFTA. *See* 740 ILCS 740/6(a).[10] In that case, the plaintiffs had

---

[10]Section 6(a) of the UFTA provides for avoidance of a transfer or obligation where the creditor's claim arose before the allegedly fraudulent transfer. Specifically, Section 6(a) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

740 ILCS 160/6(a).

filed a complaint against the debtor in a Montana state court in January 1988 seeking damages for breach of a contract. In September of the same year, before a judgment was entered in the state court suit, the debtor executed a quit claim deed conveying real estate representing the bulk of the debtor's assets and his truck business to his four sons. The deed recited that the transfer was made in consideration of $10 and other "goods" and valuable consideration. However, the evidence at trial showed that the sons did not give cash or any other consideration for the land. The Montana court entered judgment against the debtor in the amount of $131,010.80 in January, 1989. The debtor denied that he had transferred the land to avoid paying his debts, including the Montana judgment. The trial court found that the defendants were unable to show that the conveyance was for adequate consideration and set aside the conveyance. In affirming the trial court, the court of appeals stated:

> Where the challenged transaction involves an immediate family member as a preferred creditor, defendant has the burden of showing by "clear and satisfactory proof" a valid and subsisting debt which would be enforced and payment for which would be exacted regardless of the debtor's fortune or misfortune.

*Id.* at 910; *see also In re Mussa*, 215 B.R. 158, 172 (Bankr.N.D.Ill. 1997) (citing the language from *Falcon* in the context of reviewing a fraudulent conveyance claim under Section 544 and Section 6(a) of the UFTA).

The IVERSONS and IHMVCU respond that they have met their burden to establish the existence of a valid and subsisting debt, but that the TRUSTEE has unreasonably chosen to ignore those facts because of the familial relationship between the DEBTORS and the IVERSONS. They point out that the TRUSTEE has not offered any evidence to refute the validity of the note and mortgage between the DEBTORS and the IVERSONS. The

13

IVERSONS and IHMVCU point out that the IVERSONS never had to take any extra measures to enforce their loan because the DEBTORS have always made the monthly installment payments.

If the regular payments had been made to IHMVCU on a direct loan to the DEBTORS, no fraudulent transfer action would lie. Likewise, if the DEBTORS had paid the IVERSONS directly, instead of IHMVCU, on the mortgage loan from the IVERSONS, no fraudulent transfer claim would have been brought. It is the triangular nature of the transaction that provides the basis for the fraudulent transfer claims. Under the circumstances established by the undisputed evidence, however, it is clear that the substance of the transaction was a loan secured by a mortgage to enable the DEBTORS to purchase a house. Although the TRUSTEE'S theory that it was a gift dressed up to look like a loan has some surface plausibility, if only because of the familial relationship between Michael and his parents, that theory does not hold water in light of the record of seven years of regular loan payments. Loans are repaid; gifts are not.

Of the three common scenarios in which a debtor's payment of a third party's debt may be for reasonably equivalent value, the one that is most widely accepted is when the debtor's payment of a third party's debt results in a discharge of the debtor's own debt to the third party.[11] *See Smith v. American Founders Financial, Corp.,* 365 B.R. 647, 667 (S.D.Tex. 2007); *Matter of Uiterwyk Corp.,* 75 B.R. 33 (Bankr.M.D.Fla. 1987); *In re Coors of North Mississippi, Inc.,* 66 B.R. 845, 861-62 (Bankr.N.D.Miss 1986); *Wilkinson,* 196 Fed.Appx. at 343. This concept is supported by the special definition of "value" applicable to Section 548 that

---

[11] The other two scenarios are when the debtor and the third party share an identity of interests, and when the debtor enjoys the benefits of the goods or services it bought for its principal. *Smith,* 365 B.R. at 667.

14

includes "satisfaction . . . of a present or antecedent debt of the debtor." 11 U.S.C. § 548 (d)(2)(A). It is also supported by the corresponding definition in the UFTA that value is given if "an antecedent debt is . . . satisfied." 740 ILCS 160/4(a). Although the Seventh Circuit has not ruled on the specific issue at bar, it has stated the general rule that, "indirect benefits may be considered as part of the inquiry into reasonably equivalent value in a transaction." *Image Worldwide,* 139 F.3d at 579.

On the fraudulent transfer claims, the IVERSONS and IHMVCU are entitled to summary judgment based upon the indirect benefit rule. The undisputed evidence compels the conclusion that a valid debt due the IVERSONS from the DEBTORS was created in 1998 and continued through the date of bankruptcy, and that the debt was paid down by the payments to IHMVCU. The TRUSTEE'S argument that the IVERSONS must also prove that they would enforce the note upon default is overstated. The IVERSONS do not need to affirmatively prove what actions they would have taken in the hypothetical event of a default. They need only establish that they had the legal right to enforce the note against the DEBTORS and that they were, in fact, requiring the DEBTORS to fulfill their obligations. The transfer of the $46,000 to the DEBTORS from the IVERSONS is documented as a true loan, not a gift, and the DEBTORS have treated it as a true loan ever since by making all the payments. There is no evidence in the record to support the TRUSTEE'S theory that the loan was a sham. Not a single payment was waived by the IVERSONS, not even when the DEBTORS were in serious financial straits. The IVERSONS have thus established, by "clear and satisfactory proof" that a valid, enforceable loan existed, that it was actually being enforced for many years and, therefore, that it would

have continued to be enforced had bankruptcy not intervened.[12] On the record before the Court, there is no genuine issue as to whether the DEBTORS received reasonably equivalent value for each of the payments made to IHMVCU. They clearly did, and the fraudulent transfer claims fail.

**Section 547 Preference Claim**

The IVERSONS and IHMVCU also assert they are entitled to summary judgment in their favor on the TRUSTEE'S Section 547 preference claim because the payments to the IVERSONS were made in the ordinary course of the business affairs of the parties. The IVERSONS and IHMVCU assert that a review of the loan documents between the IVERSONS and IHMVCU establish that the loan was a "typical home equity line of credit loan." They also point to the undisputed deposition testimony of the DEBTORS that, pursuant to the note and mortgage, the DEBTORS have consistently made monthly payments of $460 to IHMVCU since June of 1998. From this evidence, the IVERSONS and IHMVCU conclude that, since June of 1998, an ordinary course of conduct has been established regarding payment of the loans made from IHMVCU to the IVERSONS and from the IVERSONS to the DEBTORS.

The TRUSTEE has failed to respond to this argument. By local rule, a failure to respond is deemed an admission of the motion for summary judgment. CDIL-LR 7.1(D)(2). The TRUSTEE, a party represented by counsel and a movant for summary judgment, has failed to address his claims under Section 547 in his brief in support of his motion, and chose not to respond to the Defendants' cross-motion for summary judgment on those

---

[12]At issue in *Falcon* was a father's gratuitous transfer of a business to his sons in consideration of their assumption and payment of the business debt. The court found, however, no evidence of any actual debt to be assumed. In the case at bar, it is undisputed that the DEBTORS payments to IHMVCU discharged a valid and subsisting debt to the IVERSONS.

16

Section 547 claims. Under these circumstances, the Court is of the view that the TRUSTEE has conceded the merits of Defendants' motion as to the Section 547(c)(2) ordinary course of business defense. For this reason, the Defendants' motion should be granted as to the preference claim.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###